IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| ERIC BLACKMAN, | |
|---|---|
| Plaintiff, | |
| v. | Case No. 3:16-CV-01152-NJR-GCS |
| KIMBERLY S. BUTLER, ROBERT E. HUGHES, JASON N. HART, RANDY S. PFISTER, CHAD M. BROWN, ABERARDO A. SALINAS, SALVADOR A. GODINEZ, and LESLIE MCCARTY, | |
| Defendants. | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Report and Recommendation of Magistrate Judge Gilbert C. Sison (Doc. 109), which recommends denying Plaintiff Blackman's Motion for Summary Judgment (Doc. 66) and granting in part and denying in part Defendants' Motion for Summary Judgment (Doc. 88). For the following reasons, the Court adopts the conclusions of the Report and Recommendation.

### BACKGROUND

Plaintiff Eric Blackman is an inmate of the Illinois Department of Corrections ("IDOC"). While Blackman was incarcerated at Menard Correctional Center, he alleges that prison officials repeatedly interviewed him about his suspected involvement in prison "gang operations" and told him that if he did not cooperate by informing investigators of his involvement and knowledge of prison gang activities, he would be

punished with segregation and transfer to a different prison. (Doc. 13, p. 11). Blackman, who had no disciplinary infractions at Menard from July 2012 through April 2014, maintained that he was not a part of gang activity and could provide no information. (Doc. 13, p. 11; Doc. 66, p. 5). Despite his claims, Blackman was served with an inmate disciplinary report citing him with violating Rule 205—participation in a security threat group ("STG") or unauthorized organizational activity—on April 22, 2014. (Doc. 13, p. 10; Doc. 66, p. 5).

On April 24, 2014, Blackman appeared for the first time on the STG charge before the Menard adjustment committee for a disciplinary hearing (Doc. 87-2, p. 13). The report of the hearing indicates that on April 22, 2014, the Menard Intelligence Unit concluded an investigation into the leadership of the Gangster Disciples STG at Menard. (Doc. 66-3, p. 2). Two confidential sources identified Blackman as the Assistant Institutional Coordinator for the Gangster Disciples at Menard. (*Id.*). The adjustment committee found that Blackman was an active participant in STG activity, and they recommended that he be disciplined with 3 months C grade, 3 months segregation, 3 months of commissary restriction and 6 months of contact visit restrictions. (*Id.*).

After the hearing, the Chief Administrative Officer of Menard, Defendant Butler, rejected the adjustment committee's summary report and findings and remanded the charge back to the committee for a second hearing. (*Id.*, pp. 2-3). Butler attested that a designee in her office signed the direction to remand Blackman's ticket for a second hearing and that she did not direct staff at Menard to retaliate against any offender with expanded discipline for refusing to provide incriminating information to the intelligence

unit. (Doc. 87-1).

On May 8, 2014, Defendants Hughes and Hart sat on the second adjustment committee and presided over Blackman's remanded disciplinary hearing. (Doc. 66-3, p. 4). The second adjustment committee report states that the remand was done so that the reporting officer could provide additional information to substantiate the charge against Blackman. (*Id.*) The report also states that the Chief Administrative Officer "advised the adjustment committee to impose the following discipline: 1 year seg., C-grade, and loc." (*Id.*). Defendants Hughes and Hart found Blackman guilty of violating Rule 205 and increased Blackman's original three-month sanction to twelve months of confinement in disciplinary segregation. (*Id.*, pp. 4-5). They additionally imposed a disciplinary transfer (*Id.*). Defendant Butler approved Defendants Hughes's and Hart's findings and sanctions on May 15, 2014. (*Id.*, p. 5).

Subsequent to the second adjustment committee hearing, Blackman filed numerous grievances, including a June 2014 grievance that reached the Administrative Review Board (ARB) and the IDOC Director. (*See* Doc. 13-1, pp. 6-8; 24; 25-26; *see also* Doc. 13-2, pp. 7; 10-12). Blackman's repeated complaints centered on Butler's, Hughes's, and Hart's imposition of increased sanctions. He claimed that their actions violated Title 20, Section 504.90(d) of the Illinois Administrative Code, which prohibits imposing greater sanctions on remand than what was originally imposed unless there are different charges or new evidence that was not available at the original hearing. (*Id.*; *see also* 20 ILL. ADMIN. CODE § 504.90(d)). Blackman argued that the first and second disciplinary reports were substantively identical as to the facts alleged against him, he was not charged with

a different offense at any time, and no new evidence previously unavailable was presented at the second disciplinary hearing. (*Compare* Doc. 13-1, pp. 2-3 *with* Doc. 13-1, pp. 10-11; *see also* Doc. 13-1, pp. 15-16).

In October 2014, the ARB issued its first response to Blackman's June 2014 grievance. (Doc. 13-2, p. 7). By this time, Blackman had served nearly six months in disciplinary segregation and been transferred to Pontiac. The ARB, through Defendants McCarty and Godinez, "remand[ed] the second disciplinary report back to the reporting officer at Menard to provide additional information as to how Offender Blackman was identified as an active participant in STG activity." (*Id*.). Because Blackman was already at Pontiac, the ARB further directed Menard to forward, upon completion by the reporting officer, the rewritten report to Pontiac so that it could be served and reheard. (*Id*.). While Blackman testified that the remand order was entered because Defendants McCarty and Godinez were disgruntled with his grievance writing (Doc. 87-2, p. 26-27), McCarty attested that the decision to remand the issue was not done to retaliate but rather to obtain additional information so the ARB could finalize its investigation. (Doc. 87-5).

On November 24, 2014, Blackman filed an emergency grievance with Defendant Pfister, the Pontiac CAO (Doc. 89-2, p. 32). He requested his immediate release from disciplinary segregation claiming that his due process rights were being infringed because the ARB ordered the remand hearing to commence within fourteen days, when possible. (*Id*.). He also filed a writ of mandamus in December 2014 regarding the same issue. (*Id*., p. 33). Defendant Pfister found Blackman's emergency grievance unsubstantiated and directed that his grievance should be submitted in the normal

manner. Consequently, Blackman remained confined in disciplinary segregation.

On January 15, 2015, the reporting officer from the Menard Intelligence Unit rewrote the disciplinary report against Blackman. (Doc. 13-1, pp. 15-16). Pontiac received the rewritten disciplinary report from Menard and served Blackman with it prior to the second rehearing. (Doc. 87-2, pp. 30-31). The second rehearing on the STG charge was held on January 27, 2015. Defendants Brown and Salinas, sitting on the Pontiac adjustment committee, presided over Blackman's rehearing. (Doc. 13-1, pp. 22-23).

At the hearing, Blackman submitted a two-page written statement to the Pontiac adjustment committee clearly outlining his defense as well as his procedural arguments related to the STG charge. (Doc. 66-3, pp. 7-8). He raised two issues: (1) inadequacy of the third disciplinary report to provide meaningful notice of the basis of the charge that would enable him to mount a defense; and (2) violations of 20 Ill. Admin. Code §§ 504.90(d) and 504.80(p)(2) by Defendants Butler, Hughes, and Hart, who increased his original sanction from three to twelve months at the first rehearing without the existence of different charges or new evidence. (*Id.*). Blackman requested that the Pontiac adjustment committee dismiss and expunge the STG charge initiated against him while at Menard. (*Id.*).

At the third adjustment committee hearing, Defendants Brown and Salinas found the confidential sources who provided information about Blackman were reliable. (Doc. 66-3, p. 9-10). The report noted that Blackman held an institutional coordinator position within the Gangster Disciples at Menard, a position that Blackman made an overt, conscious decision to accept. (*Id.*). They found Blackman guilty for the third time

on the same Rule 205 violation and re-imposed the increased sanctions, including the twelve-month term of confinement in disciplinary segregation. (*Id*.). On February 2, 2015, Defendant Pfister approved the determination and imposition of sanctions. (*Id*.).

Blackman subsequently filed a grievance complaining that Defendants Brown and Salinas obstructed his defense during the hearing by telling him they were not authorized to rule on the STG charge but, instead, would submit all information to the ARB so that it could make the final determination. (Doc. 13-1 pp. 25-26).

On April 27, 2015, the ARB concluded its review of Blackman's June 2014 grievance and issued its determination. (Doc. 66-3, p. 11). The ARB stated that it was reasonably satisfied Blackman violated Rule 205 so it denied his grievance. (*Id*.). The ARB determined, however, that the increased sanctions Blackman challenged, which were imposed at the May 2014 rehearing, failed to adhere to the procedural safeguards outlined by Department Regulation 504. (*Id*.). The ARB noted that the original discipline imposed should not have increased during the second hearing and directed that the discipline be reduced to reflect Blackman's original sentence of 3 months' C Grade, 3 months' segregation, 3 months' commissary restriction, and 6 months' contact visit restriction. (*Id*.). Defendant Pfister, in accordance with the ARB's directives, completed an IDOC Disciplinary Reduction Notification form and submitted it to the Records Office at Pontiac on May 5, 2015. (Doc. 13-1, p. 29). By that time, Blackman had served the entire twelve-month term that Defendants Butler, Hughes, and Hart imposed at the second hearing.

On October 19, 2016, Blackman filed this *pro se* civil rights lawsuit pursuant to

42 U.S.C. § 1983. (Doc. 1). Blackman alleges his constitutional rights under the First and Fourteenth Amendments were violated by Defendants' actions related to his disciplinary hearings and punishment. (Doc. 13).

Upon preliminary review of the First Amended Complaint under 28 U.S.C. § 1915A, the Court allowed the following claims to proceed:

> **Count 1**: First Amendment retaliation claim against Butler, Hughes, and Hart for punishing Blackman with twelve months in disciplinary segregation because he refused to admit to any involvement in a security threat group or provide information regarding prison gang activities.
>
> **Count 2**: First Amendment retaliation claim against Godinez and McCarty for unlawfully holding Blackman in segregation for the entire twelve-month term because he filed grievances to complain about his prolonged punishment.
>
> **Count 3**: First Amendment retaliation claim against Pfister, Brown, and Salinas for unlawfully holding Blackman in segregation for the entire twelve-month term because he filed grievances and a petition for writ of mandamus.
>
> **Count** 4: Fourteenth Amendment claim against all defendants for depriving Blackman of a protected liberty interest without due process of law by increasing his punishment from three to twelve months of disciplinary segregation without any new charges or evidence and delaying resolution of the matter until Blackman served twelve months in segregation.

(Doc. 12).

The parties have now filed cross-motions for summary judgment on these claims. (Docs. 66, 88). Judge Sison entered a Report and Recommendation on the motions on August 29, 2019. (Doc. 109). Timely objections were filed. (Docs. 112, 117).

## THE REPORT AND RECOMMENDATION AND OBJECTIONS

**A.     Judge Sison's Findings and Conclusions**

Judge Sison determined that Count 1—Blackman's First Amendment retaliation claim against Defendants Butler, Hughes, and Hart—was best left to the trier of fact to decide because the evidence presented a genuine dispute of fact between the parties such that a reasonable juror could find in either party's favor. (*Id*., p. 15).

As to Count 2—Blackman's First Amendment claim against Defendants Godinez and McCarty—Judge Sison determined there was no evidence that the ARB's decision to remand rather than reduce his discipline would deter First Amendment activity or that Blackman's filing of grievances motivated the ARB's October 2014 decision. (*Id*., p. 16). Because a reasonable juror could not find for Blackman on the evidence, Judge Sison recommended that summary judgment be entered in favor of Defendants McCarty and Godinez on Count 2. (*Id*.).

Judge Sison also recommended entering summary judgment in favor of Defendants Brown, Salinas, and Pfister on Count 3. (*Id*., p. 17). Judge Sison determined that the evidence was too sparse to allow a reasonable juror to find that a person of ordinary firmness would be deterred from filing grievances or lawsuits simply because an adjustment committee refused to reduce a sanction. (*Id*.). Judge Sison also concluded that the evidence was insufficient for a reasonable juror to find that the First Amendment protected activity was a motivating factor in Defendants Brown's, Salinas's, and Pfister's conduct. (*Id*.).

As to Count 4, Blackman's Fourteenth Amendment due process claim against all

Defendants, Judge Sison recommended denying the parties' dueling motions for summary judgment. Judge Sison determined that material disputes of fact exist as to whether a liberty interest was implicated, *i.e.*, whether the conditions of segregation were significantly worse than the conditions outside of segregation. Accordingly, he found that summary judgment should not be entered in favor of either party. (*Id.*, p. 19). Judge Sison also determined that a reasonable juror could conclude that Blackman did not receive the process due to him. (*Id.*). Judge Sison noted the evidence that CAO Butler "advised the adjustment committee to impose" the increased disciplinary sanction. (*Id.*, p. 21). He explained that if Blackman did not receive an impartial hearing because of Defendant Butler's perceived interference, a reasonable juror could conclude that the process was tainted from the start and that Blackman was deprived of due process until he completed the twelve-month confinement and was released from segregation. (*Id.*).

Finally, Judge Sison rejected Defendants' qualified immunity argument as to Count 4. (*Id.*, pp. 21-22). Judge Sison determined that considerable case law exists supporting the contention that long periods of segregation could implicate a liberty interest, which in turn clearly entitles a prisoner to due process. (*Id.*). As such, Judge Sison was not persuaded by Defendants' qualified immunity argument. (*Id.*).

**B.     Objections**

Although he agrees that the Report and Recommendation is legally sound as to the first three counts, Blackman makes two objections to Count 4 of Judge Sison's findings and conclusions. (Doc. 111). Blackman argues that Judge Sison did not examine whether he had a protected property interest in his personal items that were confiscated from him

throughout the entirety of the twelve-month term that he was confined to disciplinary segregation. (*Id.*, pp. 2-3). Blackman asserts that throughout this case he has repeatedly maintained that he also had a property interest entitling him to due process protections. Blackman also argues that Defendants' failure to respond to the facts supporting his claimed property interest amounts to a default on his property interest claim. (*Id.*).

Blackman's second objection focuses on the process he was due. (*Id.*, pp. 4-5). He contends that Judge Sison failed to acknowledge undisputable facts that clearly show he was not afforded a hearing before an impartial decision-maker. (*Id.*, p. 4). Specifically, he claims that the increase of his sanctions imposed by the second adjustment committee and the subsequent determinations upholding the increased sanctions occurred without Defendants meeting minimal due process principles. He advances that after his original hearing and before each subsequent hearing, he was not provided with the following: (1) advance written notice of any new charges or evidence that could justify the increased sanction; (2) the right to call witnesses or present evidence to dispute the grounds for the sanction increase; and (3) a written statement of the reason(s) for the increase of the original sanctions. (*Id.*). Blackman states that these three facts are undisputed and unequivocally demonstrate he did not receive impartial hearings. As such, he concludes it is incontrovertible that he did not receive his right to due process throughout the events culminating in the eventual retroactive reduction of his increased sanctions. (*Id.*, p. 5). He requests that the Court sustain his objections and enter summary judgment in favor of him and against all defendants as to Count 4. (*Id.*).

Defendants also objected to the Report and Recommendation to the extent Judge

Sison rejected their qualified immunity defense as to Count 4. (Doc. 112, pp. 1-2). Defendants assert that because the case law is both unclear and still evolving as to what circumstances trigger a due process liberty interest, they "could not have possibly been put on notice that their actions violated a clearly established constitutional right . . . ." (*Id.*, p. 2). Defendants conclude that the absence of existing precedent squarely governing the circumstances at issue entitles them to qualified immunity as to Count 4. (*Id.*).

## LEGAL STANDARDS

When timely objections are filed, the Court must undertake *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). This requires the Court to look at all evidence contained in the record, give fresh consideration to those issues specifically objected to, and make a decision "based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion." *Harper*, 824 F.Supp. at 788 (citing 12 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3076.8, at p. 55 (1st ed. 1973) (1992 Pocket Part)); *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). If only a "partial objection is made, the district judge reviews those unobjected portions for clear error." *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). The Court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Summary judgment is proper only if the moving party can demonstrate "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter

of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). S*ee also Ruffin Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *see also Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). But "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party[,]" then a genuine dispute of material fact exists. *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016).

A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

## DISCUSSION

### A. Due Process

Blackman argues first that Judge Sison incorrectly analyzed his due process claim under the standard for the deprivation of a liberty interest when he also had a property interest claim. He also asserts Defendants have waived the right to object to his undisputed facts regarding his property deprivation. Even when analyzing Blackman's property claim under the appropriate standard, however, the Court finds he is not entitled to summary judgment.

The Due Process Clause of the Fourteenth Amendment applies to deprivations of life, liberty, and property. *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017). Courts engage in a two-step analysis in procedural due process cases. *Id.* First, they determine whether the plaintiff was deprived of a protected property or liberty interest. If so, they determine what process was due under the circumstances. *Id.*

In order to state a claim for a procedural due process violation of a property right, a plaintiff must establish: (1) a protected property interest; (2) a deprivation of that property interest by someone acting under the color of state law; and (3) a denial of due process. *Booker-El v. Superintendent, Indiana State Prison*, 668 F.3d 896, 900 (7th Cir. 2012) (citing *Tenny v. Blagojevich*, 659 F.3d 578, 581 (7th Cir. 2011)).

There is no loss of property without due process of law, however, if a state provides an adequate post-deprivation remedy for the loss. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984). In *Hudson*, the Supreme Court held that even an intentional deprivation of an inmate's personal property is not actionable under Section 1983 if the confiscation was an unauthorized, random act and there is a meaningful post-deprivation remedy available. *Id.* at 533-34. And the Seventh Circuit has found that Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILL. COMP. STAT. 505/8 (1995). On the other hand, a post-deprivation state remedy *does not* satisfy due process "where the property deprivation is effectuated pursuant to an established state procedure." *Hudson*, 468 U.S. at 534 (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–436 (1982)).

Here, Blackman argues that about half of his property was confiscated by officials and stored in the personal property unit until he was released from segregation, including some family photos, his hair pick, beard trimmers, hair grease and conditioner, gym shoes, gloves, hat, sweat suit, bottled hygiene products, floss, and personal nail clippers. (Doc. 66, p. 22; Doc. 87-2, p. 39). But there is no evidence that Blackman's property was seized pursuant to an established state procedure such that a post-deprivation state remedy (such as an action in the Illinois Court of Claims) would not satisfy due process. Nor is there evidence that the seizure was unauthorized and random. Accordingly, even under the appropriate standard, the Court agrees with Judge Sison that neither party is entitled to summary judgment on Blackman's due process claim with regard to his personal property.

Blackman next argues that he clearly was not afforded a hearing before an impartial decision-maker with regard to his loss of liberty. He points to certain "facts" that prove he did not receive a fair hearing, including that he did not receive advance notice of any new charges or evidence, that he was unable to call witnesses or present evidence, and that he never received a written statement of the reasons for the increase in sanctions.

The evidence in the record demonstrates, however, that Blackman admitted that he received written disciplinary reports/tickets prior to appearing before the hearing panels on those three reports (Doc. 87-2, pp. 13-15, 30-31). He also admitted he was able to defend himself at the hearings, and he provided a written statement to the adjustment committee at the January 27, 2015 hearing (Doc. 66-3, pp. 7-8; Doc. 87-2, pp. 38-39).

Defendants also note that additional evidence was presented at the second and third Adjustment Committee hearings and included in the final summary reports, namely, that numerous STG-related incidents had occurred at Menard during the investigation of Blackman, including multiple fights and assaults, as well as the discovery of weapons in the possession of Gangster Disciple affiliates. And, as the Assistant Institutional Coordinator of the Gangster Disciples, Blackman assumed responsibility for all STG activity by Gangster Disciples activity. (Doc. 66-3, pp. 4, 9).

Based on this evidence, the Court agrees with Judge Sison that Blackman is not entitled to summary judgment. A reasonable jury could find that Blackman was afforded all the process he was due. Accordingly, Blackman's objection is overruled.

**B.   Qualified Immunity**

Defendants object to Judge Sison's conclusion that they are not entitled to qualified immunity on Blackman's due process claim with regard to his term in segregation. Defendants briefly argue that whether a due process liberty interest has been implicated is an unclear and evolving area of law, as there is no set length of time or specific condition of confinement that must be present in order to trigger due process protections. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (to determine whether a defendant is entitled to qualified immunity, a court must consider whether there is a violation of a constitutional right and whether that right was clearly established at the time of the alleged misconduct).

Defendants' argument is not well taken. In *Marion v. Columbia Correctional Institution*, the Seventh Circuit held that a term of 240 days in segregation requires

scrutiny of the actual conditions of confinement. *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 699 (7th Cir. 2009). And if those conditions of confinement are harsh in relation to the ordinary incidents of prison life, then a liberty interest is implicated. *Id.*

Here, Blackman spent about 365 days in segregation, so prison officials were on notice that Blackman's liberty interests were at stake if his conditions of confinement were hasher than the conditions generally found in prison. Blackman claims he was confined to his cell 24 hours per day with the exception of weekly recreation in a ten-by-six-foot cage, one weekly shower, and two one-hour, non-contact visits per month for which he was shackled. He was handcuffed during all out-of-cell movement and could not use the telephone. He described his cell as roach-infested with feces smeared on the wall. Blackman also was limited as to what he could purchase from the commissary, and he complained about the stress of listening to mentally ill inmates housed in nearby segregation cells. Based on these facts and the binding Seventh Circuit precedent, the Court concurs with Judge Sison that Defendants are not protected by the doctrine of qualified immunity.

The Court has reviewed the remaining portions of Judge Sison's Report and Recommendation for clear error and finds none.

### VI. CONCLUSION

For these reasons, the Court **ADOPTS** the conclusions of the Report and Recommendation (Doc. 109). Plaintiff Eric Blackman's Motion for Summary judgment (Doc. 66) is **DENIED**. Defendants' Motion for Summary Judgment (Doc. 88) is **GRANTED in part** and **DENIED in part**. At the close of the case, judgment shall be

entered in favor of Defendants Salvador Godinez and Leslie McCarty and against Plaintiff Eric Blackman on Count 2; and in favor of Defendants Randy Pfister, Chad Brown, and Aberardo Salinas and against Plaintiff Eric Blackman on Count 3.

Plaintiff Eric Blackman's claims against Defendants Kimberly Butler, Robert Hughes, and Jason Hart in Count 1 and against all Defendants in Count 4 remain pending.

**IT IS SO ORDERED.**

**DATED:  December 9, 2019**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**